Madam Clerk, please call the first case this morning. 115-3307, Cicero School District 99 v. Illinois State Treasurer Welcome back. My name is Erin Baker and I represent the Cicero School District, the appellant in this matter. The issue in this case is whether the Commission decision finding that Mr. Lirakos is permanently and totally disabled is against the manifesto of the evidence. It's our contention that it is because a reasonably stable market did exist where he could have found work. He acquired a number of useful and transferable skills as the co-owner of a restaurant and a painting company and as a supervisor at a factory. And he didn't produce any medical opinions or vocational reports in his own favor. The labor market surveys and the vocational reports all show a stable market where he could have found work. While he is of an advanced age, admittedly, he does have a high school education, he speaks fluent English, and he did gain valuable work experience, as I said, as the co-owner of painting companies, restaurants, and as a supervisor in a restaurant. Let me ask you a point of question. Yes. Was it your company's vocational counselor, the person you referred the claimant to, that testified the limitations made it unlikely the claimant would be employable in any known labor market? Wasn't that the employer's? Yes, that was our vocational expert. I think, though, that there's been too much emphasis put on that statement by the Commission in this case. If you go on to read through her testimony, she later clarified that there were jobs available that he could have found employment through as a ticket taker, job coach, security guard, and host, which were within his restrictions of no lifting, which was a restriction unrelated to this case, and of no computer work. His other restriction was that he couldn't have a commercial driver's license, but he was still able to drive with a regular driver's license. And she also stated later in her deposition testimony that there was a stable market for all of those jobs. Now, the employee said that he mostly looked for work at gas stations and restaurants. But that's what he testified. But there were all these other fields that were recommended by Vocomotive that it doesn't appear that he really searched hard in those fields. Now, that's a question. Did the Commission find him not believable about what he did do? No. So there's no issue of his credibility in regard to his statement of testimony? The Commission didn't find an issue of his credibility, no. Okay. And so there's evidence there that he did search for other positions. Well, he did submit evidence that he did search for positions, yes. Of course, you're saying the quantum of that evidence is overcome by the vocational evidence? Yes. I don't think that he fully complied with vocational rehabilitation to the extent that he was supposed to. The initial vocational rehabilitation letter from – I'm sorry you're speaking so fast. It's hard for me, old years, to hear you. Sorry. The initial letter from Susan Zajic of Vocomotive suggested that he searched for 20 contacts a week. That was what he was supposed to do as part of his vocational rehabilitation. He testified that he searched for 12 to 15 contacts per week, and then he also testified at 10 to 15. So he didn't meet the number of contacts per week that he was supposed to make per vocational rehabilitation. What is the claimant's testimony? Didn't Ms. Helma also support him by testifying regarding evidence of a diligent but unsuccessful job search?  She did say that, but that was prior to the hearing where he testified that he had only reached out to fewer contacts per week than was recommended. She also said that in her testimony, I want to point out that she said that she had assumed that his work as co-owner of a painting company, he only gained work experience as a painter, and that he didn't have any accounting or administrative experience. However, at the arbitration hearing, he testified that as co-owner of the painting company and restaurant, and as a supervisor at the factory, he did gain experience in supervising employees, making hiring and firing decisions, and working within the financial decisions of the companies. So he did gain more experience than he alluded to Ms. Helma. He had denied any accounting or administrative experience, but then at the arbitration hearing, it was clear that he did have some of that experience. He didn't produce, no doctor has ever said that he's not able to work in any capacity. He only has the restriction of no computer work, which the labor market survey, vocational reports, and Ms. Helma all said there were still jobs that he could do with a stable market with that restriction. The no lifting restriction, as I said, is unrelated to this case, but it was no lifting over five pounds. She also listed jobs that he could do within those restrictions. And as I said, he can't have a commercial driver's license. So while, yes, it's true that he can't go back to his former position as a commercial bus driver, he still is able to drive normally. He's able to rewrite. So that doesn't preclude him from a number of other positions. Let me ask a testimony about Helma. You pointed out that you're doing a good job of saying, well, he could work as a ticket taker, mail clerk, messenger, things like that. Did Helma testify that her opinion regarding the claimant's ability to perform those specific jobs was based upon instructions specifically given to her by the employer's insurance claims manager to not consider several relevant factors? Did she reveal that when she testified? She didn't say that. And then did she also go on to say that when she considered all relevant factors, the claimant did not have access to any stable labor market? Wasn't that her bottom line conclusion? She did say that. However, as I said, she later went on to say that he could still, within all of his restrictions taken all into consideration, he could still work as the ticket taker, job coach, security guard, or host, and that there was a stable market in those jobs for him to find employment. Did she say, I don't believe there is an access to a labor market for the claimant? She did say that, yes. What does that mean? I believe that's when she was discussing on cross-examination whether or not there was a labor market based on his restrictions. But as I said a few pages later in the deposition transcript, she did list those other jobs that she said, actually, these are available for him within his restrictions. He could complete these positions within his restrictions, and there's been a stable market for all of these positions. And you're saying that his job search that he did didn't look for those type of jobs? Yeah. He didn't testify that he looked for jobs as a ticket taker, job coach, security guard. He testified, as I said, that most of his contacts were to restaurants and gas stations. And again, there's the issue that he didn't meet the 20 contacts per week that he was supposed to meet. This man is 73 years old. He's totally lost vision in one eye, and he can count fingers with the other eye. Do you think the commission could turn around and say there really isn't a stable labor market for somebody that age and in that physical condition? Well, you know, as I said, his advanced age, you know, is certainly a factor in this case. He, Ms. Hultman initially said in the VOC reports that his age was not contraindicative to him finding a position. And that's one of the factors to look at. He does have a high school education. He speaks fluent English. And he does have a good list of experience, you know, as owner of two companies, as a supervisor in the factory. You know, let's say about physical condition. Excuse me? Sorry. That's age. You just addressed age, but isn't there a physical condition aspect? Well, yes. I mean, he can't see out of one eye. He testified he can still. He can identify fingers out of the other ones, right? He said he can see fine out of the other eye. He testified that. He can read and write normally. He has a regular driver's license. So he still is able to, you know, work normally based on his vision in the other eye. The other restriction of no lifting was, as I said, unrelated to this case. The lifting restriction was no more than five pounds. But the reports and testimony showed, you know, other jobs that he could do without having to lift that amount. So as we see this, this is a loss-of-the-eye case or, at best, a loss-of-occupation case. We ask that you reverse the decision of the commission finding against the manifest way of the evidence and find that the claimant is not permanently and totally disabled. Thank you very much. Thank you, Counsel. You have time on reply. Thank you. Counsel, you may respond. May it please the Court. Ms. Baker, my name is Stephen Globus on behalf of the appellee Dionysius Lariakos. There is abundant evidence in the record to support the commission's conclusion that Mr. Lariakos is permanently and totally disabled. At the time of his injury, he was 73 years old. He is now 81. He has a high school education. Because of his right eye injury, he can't do commercial driving and his usual customary employment at the time of the injury was a bus driver. He also has restrictions pertaining to his good eye now because looking at a computer screen or near work for too long creates eye strain. So he has limitations on how much computer work he can do and how much near work he can do. The employer refused to accommodate him, so they placed him with a vocational rehabilitation counselor with vocomotive, Lisa Helma. One of the first things Lisa Helma did was she sent him for testing by an outside company, a gentleman by the name of Mr. Boy. The testing revealed that he has few transferable work skills, that he has below average auditory comprehension, that he has below average ability to understand and carry out written instructions, that he did not meet competitive production standards on most testing, that his language, clerical, dexterity levels were not compatible with competitive employment levels. And despite all this, they commenced job placement for him. And between April of 2009 and July of 2010, he worked with Lisa Helma. He met with her two times a week. And that's the employer's vocational counselor? The employer's choice of job counselor, that's right. She testified in approximately 1,000 jobs, different locations he contacted. No one offered him a job. She testified that he met with her around 20 per week. She testified that he was fully cooperative with the job search. And the only reason why job placement was terminated was because the insurance company asked it to be terminated because they weren't getting anywhere. And then, even then, he commenced a job search on his own. And that's when he testified he was doing 10 to 15 per week on his own. Helma testified he was doing 20 a week with her. So as the case was being litigated, we took the evidence deposition of Lisa Helma. So the holding counsel was suggesting that he wasn't cooperating, he didn't do his 20 with both. Twice in her evidence deposition, she testified he was fully cooperative. I have no idea where any suggestion of non-cooperation would come from. Twice she said he was fully cooperative. So we took the evidence deposition of Lisa Helma, and she testified that considering all his limitations, there's no access to a labor market for Mr. Liriakis. And as it was developed on cross-examination, the support for this was overwhelming, that he has all of these deficits. He can't compete with other people in the labor market. Now, she did testify that there are jobs that are within his restrictions. Ticket taker, messenger, job coach, and mail clerk. So yes, those jobs are within his restrictions. They don't violate his restrictions. And yes, there is a labor market for those positions, but she never testified there was access for him to that labor market because of all of these deficits that he has, including his age and the inability to comprehend directions and problems with auditory comprehension and things like that. So based upon this evidence, we would ask that the court find that he's permanently and totally disabled and defer the decision to the commission. Thank you, counsel. Thank you. Just a couple of points in response to Mr. Gloves' argument. Now, it's true he did initially go to testing with Mr. Boyd. That testing, though, even despite the limitations that Mr. Gloves pointed out, still found that he had access to a labor market and a number of jobs where he could find work. Mr. Boyd also specifically noted in that report that he thought that the claimant had a very questionable interest in finding full-time employment. As I stated earlier, the evidence indicated that he didn't contact the 20 contacts per week that he was supposed to. He didn't search for jobs in all the areas that were listed by the vocational counselors. And Ms. Helmuth did say that the jobs as ticket taker, job coach, security guard, and host, all of those restrictions and there was a market. So as I stated earlier, I would respectfully request that you reverse the commission decision. Thank you very much for your time today. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. This morning will be taken under advisement and the written disposition shall issue.